NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| E.P., individually and o/b/o EA.P., | |
| *Plaintiff*, | Civil Action No. 17–08195 |
| v. | AMENDED OPINION |
| NORTH ARLINGTON BOARD OF EDUCATION | |
| *Defendant.* | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment and Judgment on the Administrative Record brought by Plaintiff E.P. ("Plaintiff") individually and on behalf of her minor daughter EA.P ("EAP"). ECF No. 10. Defendant North Arlington Board of Education ("Defendant" or the "North Arlington") filed an Opposition and Cross Motion for Summary Judgment. ECF No. 18. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted in part and denied in part. This case is remanded to the Administrative Law Judge for further proceedings consistent with this Opinion.

## I. BACKGROUND

EAP is a child who was born on September 12, 2012. Pl. Statement of Material Facts ("Pl. SOMF") ¶ 1, ECF No. 10.1.[1] At all relevant times, EAP resided in the area served by Defendant North Arlington Board of Education. Id. This action arises out of a dispute over Defendant's

---

[1] The facts are taken from each party's Local Rule 56.1 Statement. Unless otherwise noted, the facts are undisputed. Moreover, where facts in a party's statement are supported by evidence in the record and denied by the opposing party without citation to conflicting evidence, the Court deems such facts undisputed. See Fed. R. Civ. P. 56(e)(2)–(3); Carita v. Mon Cheri Bridals, LLC, 10–2517, 2012 WL 2401985, at *3 (D.N.J. June 25, 2012).

alleged failure to comply with its obligations under federal and state law to provide EAP with a free appropriate public education in the least restrictive environment.

### A. Statutory Framework

The Individuals with Disabilities Education Act (the "IDEA") was enacted to ensure that all children with disabilities have access to "[a] free appropriate public education" ("FAPE"). 20 U.S.C. § 1412(a)(1); see H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch., 873 F.3d 406, 408 (3d Cir. 2017). "A [FAPE] consists of education instruction specially designed to meet the unique needs of the handicapped child." Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 755–56 (3d Cir. 1995) (internal quotation marks omitted). A FAPE also requires that children with disabilities be placed in the least restrictive environment ("LRE")—the environment that, "to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." Carlisle Area Sch. v. Scott P., 62 F.3d 520, 535 (3d Cir. 1995). The primary mechanism for delivering a FAPE is through an individualized education program ("IEP"). See C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 65 (3d Cir. 2010); 20 U.S.C. § 1414(d)(1)(A). An IEP is a written plan that outlines the child's level of functioning, sets forth measurable goals, describes the services to be provided, and establishes objective criteria for evaluating progress. C.H., 606 F.3d at 65.

Parents who disagree with their child's placement may enroll their child elsewhere and seek reimbursement, but reimbursement is not required if the school district offered the student a FAPE. Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 198 (3d Cir. 2004). Parents are also entitled to file a due process complaint with the state or local educational agency. 20 U.S.C. § 1415(f)(1)(A); see N.J.A.C. 6A:14–2.7(c). In New Jersey, a hearing is held before an

administrative law judge whose decision is "final and binding on the parties." L.P. v. Edison Bd. of Educ., 265 N.J. Super. 266, 274 (Law Div. 1993); see N.J.A.C. 6A:14–2.7(l); see also 20 U.S.C. § 1415(f).

An aggrieved party may then appeal the administrative decision in federal or state court. 20 U.S.C. § 1415(i)(2). Where parents have sought reimbursement for a unilateral placement, the court must first determine whether the IEP afforded the student a FAPE. See Shore Reg'l High Sch. Bd. of Educ., 381 F.3d at 198-99. "A state satisfies its duty to provide a [FAPE] by providing 'an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.'" D.S. v. Parsippany Troy Hills Bd. of Educ., Civ. No. 17–9484 (KM) (MAH), 2018 WL 6617959, at *9 (D.N.J. Dec. 18, 2018) (quoting Endrew F. ex rel Joseph F. v. Douglas Cty. Sch. Dist. RE–1, 137 S. Ct. 988, 1001 (2017)). However, "[a] program need not and cannot guarantee a student's academic progress." S.C. Through Helen C. v. Oxford Area Sch. Dist., 751 F. App'x 220, 223 (3d Cir. 2018) ("[A] student's slow progress does not prove that [his programs] were deficient." (internal quotation marks omitted)). After reviewing the record, the "court is authorized to grant 'such relief as [it] determines is appropriate' based on the preponderance of the evidence." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(i)(2)(C)). "These remedies include, inter alia, 'attorneys' fees, reimbursement for a private educational placement, and compensatory education.'" Id. (quoting Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 185 (3d Cir. 2009)).

### B. Factual Background

EAP began receiving speech therapy, occupational therapy, and developmental instruction when she was seventeen months old. See ECF No. 10.6 at 1. In June 2015, Plaintiff sought to have EAP classified as a preschool student with a disability such that she was eligible for special

education services. Defendant and EAP's case manager performed psychological, educational, social, and speech evaluations of EAP. Pl. SOMF ¶¶ 22–26. EAP scored lower than the first percentile on receptive and expressive communication. Id. ¶ 27; Def. Response to Pl. SOMF ("Def. Response") ¶ 27, ECF No. 18. On June 16, 2015, Defendant found EAP eligible for special education and related services as a preschool child with a disability. Pl. SOMF ¶ 32. Defendant offered EAP an IEP that placed her in an in–district preschool disabilities classroom; in other words, EAP would not have any peers without disabilities. Id. ¶ 41. Though Plaintiff initially objected, she ultimately signed the IEP on July 28, 2015. Id. ¶ 60. The finalized IEP provided for an "in–district placement in a self–contained autism program" with "speech and language therapy three times per week for 30 minutes in a small group setting." Id. ¶ 61. The IEP also provided that EAP would have art, music, and gym with general education kindergarten students once per day. Id. ¶ 62. At the end of the 2015–2016 school year, Defendant told Plaintiff that the district planned to declassify EAP because she had made significant progress over the course of the year. Id. ¶¶ 100–01.

### C. The Administrative Proceedings

Plaintiff requested due process by filing a petition challenging Defendant's decision. Id. ¶ 4; Def. Statement of Material Facts ("Def. SOMF") ¶ 1, ECF No. 17. On June 22, 2016, Plaintiff also filed a request for emergent relief, which challenged the district's decision not to offer EAP an extended school year program. Id. ¶ 4. On August 8, 2016, Defendant held an eligibility meeting and again proposed declassification of EAP. Pl. SOMF ¶ 107. As a result, Plaintiff provided Defendant with timely notice of her intention to place EAP at Lightbridge Academy ("Lightbridge") and seek reimbursement. Id. ¶ 109. The parties attempted to mediate the matter on August 12, 2016 but were unsuccessful. Id. ¶ 8.

On January 30, 2017, Plaintiff's newly–retained counsel filed an amended petition for due process. Id. ¶ 6. In the amended petition, Plaintiff sought reimbursement for EAP's placement at Lightbridge, compensatory education for the 2015–2016 school year, and reimbursement for all expenses incurred in providing EAP with unilateral services during the 2015–2016 and 2016–2017 school years, including attorney's fees. Id. ¶ 9. The matter was transmitted to the Office of Administrative Law for a hearing before an Administrative Law Judge (the "ALJ"). Id. ¶¶ 10, 12. The record closed on July 17, 2017. Id. ¶ 11.

The ALJ issued a decision on August 29, 2017. ECF No. 10.5 at 4. The ALJ reviewed eighty–seven exhibits and heard testimony from eight witnesses, including: Caroline Kropp, EAP's case manager; Jennie Ann Porfido, EAP's teacher for the 2015–2016 year; Freda Attinson, Plaintiff's expert in speech and language pathology; Cynthia Hornstein, the District's expert on speech and language pathology; Dr. Mark Pesner, Plaintiff's expert in pediatric clinical psychology; Plaintiff, EAP's mother; Dr. Michele Carol Havens, North Arlington's expert in special education; and Jeremie Hafitz, an expert in speech and language pathology. Id. at 11–42; ECF No. 10.7 at 1–3.

The ALJ made the following findings: (1) the education provided to EAP was reasonably calculated to offer her a FAPE in the least restrictive environment, id. at 44; (2) the determination to declassify EAP was appropriate under the circumstances, id. at 47; and (3) the declassification of EAP did not deny her a FAPE, id. Citing the testimony of both parties' witnesses, the ALJ found it "abundantly clear" that any additional services that might provide some benefit "were not affecting [EAP's] ability to access the general education curriculum." Id. at 10. In addition, the ALJ found that EAP did not have a continued need for special education because she was "already able to interact appropriately with peers in a naturalistic setting without support." Id. at 11.

The ALJ noted that North Arlington's witnesses were all qualified experts who were very familiar with the IEP provided for the 2015–2016 school year. Id. at 44. In contrast, the ALJ noted that none of Plaintiff's witnesses had observed EAP in her program, except for Pesner, whose testimony was "sincere" but "motivated by the relationship he had with [Plaintiff] and her family over an extended period of time." Id. at 11, 44. The ALJ found that Plaintiff's witnesses "failed to give a complete picture of the situation." Id. Moreover, the ALJ noted that Plaintiff's own testimony was "nearly" the only basis for her claim that North Arlington failed to provide a FAPE. Id. Because the ALJ found that there had been no denial of a FAPE, the ALJ concluded that Plaintiff was not entitled to reimbursement for the unilateral placement of EAP at Lightbridge Academy. Id. at 47.

Plaintiff then filed this action challenging the ALJ's decision. Plaintiff's Complaint asserts two counts: (1) the ALJ erred in finding that North Arlington did not violate the IDEA, Compl. ¶¶ 56–64; and (2) North Arlington violated the Americans with Disabilities Act (the "ADA"), Section 504 of the Rehabilitation Act of 1973 (the "RA"), and the New Jersey Law Against Discrimination ("NJLAD") by directly or indirectly denying the benefits of a public education to EAP for the 2015–2016 and 2016–2017 school years, id. ¶¶65–71.[2] Plaintiff now seeks summary judgment on all claims. ECF No. 10. Defendant subsequently filed a cross motion for summary judgment. ECF No. 18.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party

---

[2] The ALJ declined to rule on Plaintiff's ADA, RA, and NJLAD claims because he lacked jurisdiction. See ECF No. 10.5 at 48 ("[T]hose claims must be decided on another day in a different forum.").

bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248. "The standard by which the court decides a summary judgment motion does not change when the parties file cross–motions." Clevenger v. First Option Health Plan of N.J., 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) ("[T]he court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion.").

Here, "the summary judgment standard must be viewed in the context of what is effectively an appeal of an administrative decision." V.M. ex rel. B.M. v. Sparta Twp. Bd. of Educ., No. 12–892 KM, 2014 WL 3020189, at *17 (D.N.J. July 3, 2014). Therefore, the court must apply a "modified de novo review," giving "due weight and deference to the findings in the administrative proceedings." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010) (internal quotation marks omitted). The ALJ's factual findings are reviewed for clear error. Parsippany Troy Hills Bd. of Educ., 2018 WL 6617959, at *10. If the reviewing court does not adhere to the ALJ's factual findings, it must explain why. Bayonne Bd. of Educ., 602 F.3d at 564 (explaining that the ALJ's factual findings are considered prima facie correct). Moreover, the reviewing court must accept the ALJ's credibility determinations and "may disturb them only upon a finding that non–testimonial extrinsic evidence justifies a contrary conclusion." C.S. v. Montclair Bd. of Educ., No. 16–3294 (JLL), 2017 WL 4122433, at *5 (D.N.J. Sept. 18, 2017). "In contrast to its factual findings, the ALJ's conclusions of law are subject to plenary review by a district court." EIH v. Fair Lawn Bd. of Educ., 747 F. App'x 68, 71 (3d Cir. 2018).

## III. ANALYSIS

### A. Count 1: Plaintiff's IDEA Claims

Having reviewed Plaintiff's briefing, the Court finds that Plaintiff's arguments relating to her IDEA claims can be summarized as follows: (1) the ALJ erred in finding that the 2015–2016 IEP constituted a FAPE in compliance with Endrew F. v. Douglas County School District, 137 S. Ct. 988 (2017); (2) the ALJ erred in finding that the 2015–2016 placement for EAP was in the least restrictive environment; and (3) the ALJ erred in determining that North Arlington's declassification of EAP at the end of the 2015–2016 school year was proper. As a result, Plaintiff also argues that EAP is entitled to compensatory education for the 2015–2016 school year and tuition reimbursement for the 2016–2017 school year. Each of these arguments is addressed below.

#### 1. Endrew F.

Plaintiff contends that the ALJ committed reversible error by failing to consider and properly apply the law as established in Endrew F. v. Douglas County School District, 137 S. Ct. 988 (2017). Pl. Br. at 18–29. Specifically, Plaintiff argues that the ALJ's decision fails to comply with Endrew F. because: (a) the ALJ did not apply the FAPE standard set forth in the decision; (b) the IEP did not aim for progress in the general education curriculum; (c) the IEP did not contemplate progress in light of EAP's circumstances; (d) EAP's goals and objectives were created without parental input; and (e) North Arlington failed to provide cogent and responsive explanations for its decisions. Id. The Court finds each of Plaintiff's arguments unavailing.

##### a. FAPE Standard

First, Plaintiff argues that the ALJ erred in applying the Third Circuit's "meaningful–benefit" test, given that it is inconsistent with the "more specific" FAPE standard set forth in

_Endrew F._  Pl. Br. at 19–21.  The Court disagrees.

The Third Circuit has explicitly held that _Endrew F._ did not overrule the meaningful–benefit test.  _K.D. v. Downingtown Area Sch. Dist._, 904 F.3d 248, 254 (3d Cir. 2018); _see also Parsippany Troy Hills Bd. of Educ._, 2018 WL 6617959, at *10 (rejecting the argument that the standard in _Endrew F._ overruled the "meaningful benefit" test).  In _Endrew F._, the United States Supreme Court found that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  _Endrew F._, 137 S. Ct.  at 1001.  The Third Circuit determined, however, that _Endrew F._'s language "mirrors [the Third Circuit's] longstanding formulation[ that] the educational program 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities.'"  _K.D._, 904 F.3d at 254 (quoting _Ridley Sch. Dist. v. M.R._, 680 F.3d 260, 269 (3d Cir. 2012)).  Accordingly, the ALJ did not err in citing and applying the Third Circuit's meaningful–benefit test.

Furthermore, the Court finds that the ALJ's determination that the IEP conferred a meaningful educational benefit, and thus a FAPE, is supported by the record.  _See_ ECF No. 10.5 at 44.  Plaintiff argues that the 2015-2016 IEP "placed [EAP] in a class where she was the highest functioning student, with no appropriate role models, so that she could not meaningfully work on her goals with an eye toward progress in the general education curriculum." Pl. Br. at 26.  Plaintiff relies on her own testimony and that of Dr. Pesner, a long–time friend of Plaintiff's family, to support her argument that EAP still had trouble appropriately engaging with her peers at the end of the 2015–2016 school year.  _See_ ECF No. 10.29 at 8–9, 100.  The ALJ, however, did not find the testimony of Plaintiff or Dr. Pesner to be credible, _see_ ECF No. 10.5 at 44, and Plaintiff has not offered sufficient evidence to support a finding that the ALJ's credibility determinations should

be disturbed, <u>see</u> <u>C.S.</u>, 2017 WL 4122433, at *4 ("[Credibility] determinations are given special weight and this Court may disturb them only upon a finding that non–testimonial evidence justifies a contrary conclusion.").

In addition, the ALJ found that all of North Arlington's witnesses agreed that EAP "made remarkable gains across all domains since entering the District's preschool program <u>including the area of social behavior</u>." ECF No. 10.5 at 10 (emphasis added). Even Ms. Porfido, who testified that EAP lacked "appropriate social models" in the non–integrated setting, indicated that EAP was "generally appropriately interacting with peers" and had mastered most of her goals during the 2015–2016 school year. <u>See</u> ECF No. 10.28 at 87–88. The ALJ also noted that EAP's progress reports, report cards, work samples, and other evaluations "supported the fact that the IEP provided EAP with an education program reasonably calculated to provide meaningful educational benefit," which she attained during the 2015–2016 school year. <u>Id.</u> at 44. Nothing in the record contradicts these factual findings.

While the IEP "may not have been perfect," <u>see</u> <u>C.S.</u>, 2017 WL 4122433, at *7, the Court finds that the ALJ correctly determined that the IEP was reasonably calculated to enable EAP to receive a meaningful educational benefit. <u>See</u> <u>Endrew F.</u>, 137 S. Ct. at 992 ("[T]he question is whether the IEP is <u>reasonable</u>, not whether the court regards it as ideal."); <u>see also</u> <u>D.S.</u>, 602 F.3d at 556 ("[A] state is not required to supply an education to a handicapped child that maximizes the child's potential, it must confer an education providing significant learning and meaningful benefit to the child." (internal quotation marks omitted)).

**b. General Education Curriculum**

Next, Plaintiff argues that North Arlington's 2015–2016 IEP is inconsistent with <u>Endrew F.</u>'s requirement that the IEP aim for "progress in the general education curriculum." 137 S. Ct. at

994 (internal quotation marks omitted). The Court disagrees.

Endrew F. reiterated the statutory requirement that an IEP include, among other things, "a statement of measurable annual goals . . . designed to . . . enable the child to be involved in and make progress in the general education curriculum." Endrew F., 137 S. Ct. at 994 (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(II), (IV)); see 34 C.F.R. § 300.320. Plaintiff maintains that EAP's "program neither planned for, nor monitored progress in, the general education curriculum." Pl. Br. at 22. While Plaintiff is correct that EAP's IEP lacked any specific reference to the general education curriculum, such a procedural violation is only actionable under the IDEA if it impeded the child's right to a FAPE, significantly impeded the parents' opportunity to participate in the FAPE process, or caused a deprivation of educational benefits. See 20 U.S.C. § 1415(f)(3)(E)(ii); Bayone Bd. of Educ., 602 F.3d at 565; see also Anello v. Indian River Sch. Dist., 355 F. App'x 594, 599 (3d Cir. 2009) (treating the failure to include a statement relating to progress in the general education curriculum as a procedural violation). Thus, "a school district's failure to comply with the procedural requirements of IDEA will constitute a denial of a FAPE only if such violation caused substantive harm to the child or his parents." Alloway Twp. Bd. of Educ. v. C.Q., 2014 WL 1050754, at *5 (D.N.J. Mar. 14, 2014).

Here, Plaintiff fails to explain how this procedural violation caused substantive harm to either Plaintiff or EAP, and the record does not contain evidence that any such consequences resulted here. The ALJ found it "abundantly clear" that any additional services that might provide some benefit "were not affecting [EAP's] ability to access the general education curriculum." ECF No. 10.5 at 10 ("[A]ny lingering deficits did not significantly impact verbal and non–verbal communication and social interaction that adversely affects [EAP's] educational performance.").

This Court gives due deference to the ALJ's factual findings and sees no reason to disturb them.[3] Accordingly, North Arlington's failure to state a plan for progress in the the general education curriculum is not actionable under the IDEA in this case.

### c. Specially Designed Program

Plaintiff also argues that the IEP was not reasonably calculated to enable EAP to make progress appropriate in light of her circumstances, as is required by Endrew F. Pl. Br. at 22–26.; see Endrew F., 137 S. Ct. at 999. Though the ALJ determined that North Arlington's IEP conferred a FAPE, he did not explicitly make a finding as to whether the IEP adequately addressed EAP's unique circumstances. See Oberti, 995 F.2d at 1221 (explaining that no due deference to the agency proceeding is required where an issue is not considered). Having reviewed the record, the Court finds that Plaintiff fails to establish by a preponderance of the evidence that the IEP was not designed with EAP's needs in mind.

To comply with its obligations under the IDEA, a school must offer an IEP that is "specially designed" to meet a child's "unique needs." 20 U.S.C. § 1401(29). "An education is 'specially designed' if the IEP is made 'in light of the student's intellectual potential.'" Norristown Area Sch. Dist. v. F.C., 636 F. App'x 857, 861 (3d Cir. 2016) (quoting Chambers, 587 F.3d at 182). However, "courts must accord significant deference to the choices made by school officials as to what constitutes an appropriate program for each student." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 269 (3d Cir. 2014).

Plaintiff maintains that North Arlington did not consider EAP's unique needs, and instead,

---

[3] In addition, courts in this District have found no loss of educational opportunity where—as here—the Plaintiff fails to show denial of a FAPE. See P.D. v. Franklin Twp. Bd. of Ed., 05–2363 (SRC), 2006 WL 753152, at *8 (D.N.J. Mar. 23, 2006) ("For the reasons stated above, the Plaintiffs have failed to demonstrate that any alleged procedural inadequacies resulted in the loss of any educational opportunity for [their child] because they failed to show that the District's proposed IEP for the 2004–05 school year did not offer [their child] a proper FAPE.").

tried to fit EAP into a "preschool disabled program designed for students with significantly different needs." Pl. Br. at 24. Yet, the goals and objectives written for EAP aligned with her needs, indicating that the IEP was "designed to be responsive" to EAP's unique circumstances. See Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 245 (3d Cir. 2009) (internal quotation marks omitted). For example, EAP's evaluation indicates that she was unable to perform the following social skills expected of an 18 to 30-month-old: (1) spontaneously "mand"[4] to a peer five times; (2) engage in sustained social play with peers for three minutes without adult prompts; (3) spontaneously respond to mands from peers five times; and (4) spontaneously mand to peers to participate in social play two times. SOMF ¶ 68. Significantly, the IEP's social goals and objectives track these needs with nearly identical language. See, e.g., EAP Progress Report[5] at 38 ("The student will engage in sustained social play with peers for 3 minutes without adult prompting and reinforcement.").

Plaintiff argues, however, that the IEP did not contain goals for other specific needs, such as "completing twenty–five different fill–in–the–blank phrases." Pl. Br. at 25 (citing SOMF ¶ 72). The Court finds this argument unpersuasive. Though the IEP may not have included an identical goal for each identified need, it is clear that EAP's goals were intended to address EAP's deficiencies. See, e.g., EAP's Progress Report at 37–38 (listing the following goals: "[r]espond to interrogatives . . . with minimal assistance 70% of the time" and "[t]he student will answer 25 different who or where questions"). Similarly, EAP's evaluation indicated that she was unable to exhibit most of the social skills expected of typical child of 30–48 months. See SOMF ¶ 70. While the IEP did not address every deficiency from that checklist, it did address many of them.

---

[4] "Mand" in this context means request. See Pl. SOMF ¶ 69.
[5] Refers to EAP's progress report which lists her goals and objectives for the 2015–2016 school year. ECF No. 10.15.

Compare, e.g., EAP's Evaluation[6] at 25 ("Intraverbally responds to 5 different questions or statements from peers."), with EAP's Progress Report at 38 ("The student will intraverbally respond to 5 different questions or statements from peers."). Given that EAP was still working on mastering the social skills of a typical 18 to 30-month-old, the Court does not find it unreasonable that the IEP did not contain goals for all of the more advanced social skills. See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 198 (1982) ("[T]o require . . . the furnishing of every special service necessary to maximize each handicapped child's potential is . . . further than Congress intended to go.").

Plaintiff also points to the testimony of Porfido, who indicated that EAP lacked "appropriate social models" in the non–integrated setting. Pl. Br. at 25–26; see ECF No. 10.28 at 87–88. However, the weight of the evidence in the record indicates that the IEP was designed with EAP's unique needs in mind. Indeed, in recognition of EAP's social needs, the IEP provided that EAP would have art, music, and gym once per day with general education kindergartners. Accordingly, Plaintiff has failed to show by a preponderance of the evidence that the 2015–2016 IEP was developed without considering EAP's unique needs.

### d. Parental Participation in Goals and Objectives

Plaintiff contends that the ALJ erred as a matter of law when he held that the creation of goals and objectives without parental input did not violate the IDEA. Pl. Br. at 27–28. Though the creation of goals without Plaintiff's input may have amounted to a procedural violation, the Court is unpersuaded that it deprived EAP of a FAPE.

The IDEA requires that parents of a disabled child be provided with an opportunity "to examine all records relating to such child and to participate in meetings with respect to the

---

[6] Refers to the evaluation of EAP prior to the 2015–2016 school year. ECF No. 10.13.

identification, evaluation, and educational placement of the child." 20 U.S.C. § 1415(b)(1). As explained, however, a procedural violation is only actionable under the IDEA if it results in a loss of educational opportunity, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits. See Bayonne, 602 F.3d at 565.

Here, it is undisputed that the initial IEP did not contain goals and objectives and that North Arlington staff later created EAP's goals and objectives without Plaintiff's participation. See Pl. SOMF ¶¶ 34, 36; Def. Response ¶¶ 34, 36. Yet, Plaintiff has not shown by a preponderance of the evidence that the creation of goals and objectives without her input resulted in the loss of educational opportunity for EAP. Moreover, the record does not indicate that Plaintiff was "excluded from the development of [EAP's] IEP or the placement process," such that she was seriously deprived of her parental right of participation. See Fuhrmann on Behalf of Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1036 (3d Cir. 1993). Rather, the record contains numerous instances during which Plaintiff worked with North Arlington on EAP's placement. See G.N. v. Bd. of Educ. of Twp. of Livingston, 05–3325 (JAG), 2007 WL 2265035, at *7–8 (D.N.J. Aug. 6, 2007) (finding that the lack of goals and objectives in an IEP did not amount to a denial of a FAPE where the parents were permitted to participate in the development of the IEP).

After Plaintiff received the proposed IEP, she provided North Arlington with a letter from an expert in pediatric development that contained recommendations for EAP's development. Pl. SOMF ¶¶ 43–45. While North Arlington initially may have been unresponsive to some of Plaintiff's concerns, Plaintiff "ultimately had an opportunity to participate meaningfully in the creation of an IEP." See Bayonne, 602 F.3d at 565 (finding that the school's initial unresponsiveness did not deprive the parents of their participation rights where they ultimately had an opportunity to meaningfully participate in the creation of the IEP). EAP's case manager

discussed the letter with Plaintiff during the summer of 2015. Id. ¶ 57. After review, North Arlington agreed to one of Plaintiff's requests. Id. ¶ 59. While the majority of Plaintiff's requests were not accepted, "a school district is not liable for failing to accept parents' recommendations." See G.A. ex rel L.A. v. River Vale Bd. of Educ., 11–3801 (FSH), 2013 WL 5305230, at *21 (D.N.J. Sept. 18, 2013). "The district need only listen to [parental] concerns and permit parental involvement in the development of their child's education," which North Arlington did. See id.; see also L.G. v. Fair Lawn Bd. of Educ., 09–4656, 2011 WL 2559547, at *5 (D.N.J. June 27, 2011) ("If the standard for measuring meaningful parental participation was that the parents always prevailed, there would be no process at all."). Moreover, the revised IEP was presented to Plaintiff for her approval and Plaintiff ultimately signed it. Pl. SOMF ¶ 60; see Bayonne, 602 F.3d at 566; see also Fuhrmann, 993 F.2d at 1036 (finding meaningful parental participation even where parents did not sign the IEP because they were presented with a draft and suggested changes, and the district incorporated some requests).

Although EAP's goals were created without Plaintiff's input, the record indicates that Plaintiff received reports that contained EAP's goals and detailed EAP's progress. See ECF No. 10.27 at 81; ECF No. 10.29 at 104–5; see also Pl. SOMF ¶ 40. There is no evidence in the record that suggests that Plaintiff was denied the opportunity to discuss modification of those goals. See G.A., 2013 WL 5305230, at *20 (noting that where terms are changeable, there is no violation). Indeed, North Arlington staff met with Plaintiff at her request in February 2016 to discuss EAP's placement. Pl. SOMF ¶¶ 80–82. Based on their discussions, North Arlington agreed to provide EAP with occupational therapy and physical therapy evaluations. See ECF No. 10.27 at 35–36; Pl. SOMF ¶ 87. This back–and–forth between Plaintiff and North Arlington demonstrates that Plaintiff was not seriously deprived of her parental participation rights. See G.A., 2013 WL

53052230, at *21 (finding meaningful parental participation where the IEP placement reflected plaintiff's input, "even if the final result was not one that fully satisfied [plaintiff]"). Accordingly, North Arlington's creation of goals and objectives for EAP without Plaintiff's input did not amount to denial of a FAPE.

### e. North Arlington's Failure to Provide Reasonable Explanations

Plaintiff also argues that North Arlington failed to provide her with cogent and responsive explanations for its decisions, which is inconsistent with Endrew F. Pl. Br. at 28–29; see Endrew F., 137 S. Ct. at 993 ("[A] reviewing court may fairly expect [school] authorities to be able to offer a cogent and responsive explanation for their decisions that shows that the IEP is reasonably calculated to enable the child to make progress appropriate in light of [her] circumstances."). For the reasons previously expressed, this claim fails as well.

Plaintiff argues that North Arlington did not adequately explain its reasons for denying her request to place EAP in an integrated setting. See Pl. Br. at 29 ("Board personnel simply reiterated that North Arlington had no inclusive programming."). Even assuming that North Arlington's response was inadequate, Plaintiff fails to explain how the inadequate explanation independently resulted in a loss of educational opportunity, seriously deprived her of her parental participation rights, or caused a deprivation of educational benefits. As this Court previously determined, Plaintiff was not seriously deprived of her parental participation rights, as she was sufficiently involved throughout the IEP process. See supra Section III.A.1.d.

While Plaintiff has also identified at least once instance in which North Arlington did not respond to her requests, see SOMF ¶ 49 (noting that North Arlington never explained its denial of her request for an occupational therapy evaluation), she has likewise failed to establish that such a procedural violation amounted to denial of a FAPE. See supra Section III.A.1.d. Plaintiff's

argument is further undermined by the fact that North Arlington ultimately agreed to provide EAP with an occupational therapy evaluation. See Pl. SOMF ¶ 87. As such, Plaintiff was not so removed from the IEP process that she was deprived of her parental participation rights.

### 2. Least Restrictive Environment

Plaintiff argues that the ALJ erred in holding that the IEP offered for the 2015–2016 school year complied with the IDEA's LRE requirements.[7] Pl. Br. at 13–17. The Court finds, however, that the ALJ did not consider this specific issue. Accordingly, the Court remands to the ALJ to consider whether North Arlington violated the LRE requirement.

The IDEA mandates "education in the least restrictive environment that will provide [the child] with a meaningful educational benefit." S.H. v. State–Operated Sch. Dist. of City of Newark, 336 F.3d 260, 265 (3d Cir. 2003) (internal quotation marks omitted); see 20 U.S.C. § 1412(a)(5)(A). To determine whether a school district complies with the LRE requirement, the Third Circuit has adopted a two–part test. See T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 579 (3d Cir. 2000) (citing Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1215 (3d Cir. 1993)). First, a court must "determine whether the school can educate the child in a regular classroom with the use of supplementary aids and services." S.H., 336 F.3d at 272. In making this determination, courts consider: "(1) the steps the school district has taken to accommodate the child in a regular classroom; (2) the child's ability to receive an educational

---

[7] As an initial matter, Plaintiff claims that North Arlington conceded that it violated the LRE requirement. The Court disagrees. Plaintiff points to the testimony of Porfido, who stated that she believed "the most appropriate setting" for EAP was a general education inclusion setting. ECF No. 10.28 at 89. Porfido also testified that EAP was the highest functioning student she had ever had and as such, EAP "had no really appropriate social models" in the non–integrated setting. Id. at 88. This testimony cannot be characterized as a concession regarding the LRE mandate. At best, it suggests that EAP could have been educated in an integrated classroom, which is relevant to the LRE analysis. See Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1215 (3d Cir. 1993). Regardless, a concession by one North Arlington witness is not equivalent to a concession by the North Arlington Board of Education.

benefit from regular education; and (3) the effect the disabled child's presence has on the regular classroom." T.R., 205 F.3d at 579.  If the child cannot be educated in an integrated classroom, the court must "decide whether the school is mainstreaming the child to the maximum extent possible." S.H., 336 F.3d at 272.  Significantly, "[t]hese requirements apply to preschool children." T.R., 205 F.3d at 579 (citing 34 C.F.R. § 300.552).

Here, the ALJ concluded that EAP's placement in a completely segregated classroom constituted a FAPE in the least restrictive environment.  ECF No. 10.5 at 41.  However, the ALJ did not conduct an LRE analysis separate from the FAPE analysis.  See A.G. ex rel S.G. v. Wissahickon Sch. Dist., 374 F. App'x 330, 334 (3d Cir. 2010) ("FAPE and LRE are distinguishable."); D.E.R. v. Bd. of Educ. of Borough of Ramsey, 04–2274 (DRD), 2005 WL 1177944, at *6 (D.N.J. May 18, 2005) ("Inquiry into the LRE cannot be dismissed as immaterial because the LRE requirement is critical under the IDEA.").  In other words, the ALJ did not consider whether North Arlington made efforts to include EAP in an integrated classroom with supplementary aids and services for the 2015–2016 school year, as is required by IDEA. See ECF No. 10.5 at 10; see also Oberti, 995 F.2d at 1221 (explaining that no due deference to the agency proceeding is required where an issue is not considered).  Thus, the Court remands to the ALJ for consideration of this issue.

### 3. Declassification

Lastly, Plaintiff argues that the ALJ erred in finding that EAP's declassification for the 2016-17 academic year was appropriate.  The Court disagrees.

Because this issue does not involve the provision of an IEP, but rather the determination of eligibility, the Court notes that this issue does not "come within the ambit of the Supreme Court's holding in Schaffer v. Weast, which placed the burden of proof on the party seeking relief

in an administrative hearing challenging an IEP." <u>M.B. ex rel. J.B. v. S. Orange/Maplewood Bd. of Educ.</u>, 09–5294 (SRC), 2010 WL 3035494, at *6 (D.N.J. Aug. 3, 2010) (citing <u>Schaffer v. Weast</u>, 546 U.S. 49, 62 (2005)).  This Court therefore follows the reasoning put forth in <u>M.B. ex rel J.B. v. South Orange/Maplewood Board of Education</u>, which found that the school district bears the burden of demonstrating that it complied with the IDEA in deeming the child ineligible for special education services.  <u>See</u> <u>id.</u>

Plaintiff raises two issues with respect to declassification.  First, Plaintiff argues that North Arlington violated the IDEA in failing to conduct a reevaluation of EAP prior to declassification. Pl. Br. at 30 (citing 34 C.F.R. § 300.305(e)(1), (2); N.J.A.C. § 6A:14–3.8(d)).  The Court finds this argument unavailing given the ALJ's finding that Plaintiff "refused to meet with the District . . . in order to discuss a formal re–valuation of [EAP]." ECF No.10.5 at 46.  This factual finding is supported by the record.  In short, Plaintiff declined to meet with North Arlington to discuss reevaluation after she filed her request for mediation because she believed she had "stay–put" rights under the IDEA.[8]  Although the "'stay–put' provision, [20 U.S.C.] § 1415(j), protects the status quo of a child's educational placement while a parent challenges a proposed change to, or

---

[8] During a meeting on June 16, 2016, North Arlington told Plaintiff that they planned to declassify EAP given her progress. Pl. SOMF ¶ 101.  The next day, Plaintiff filed for mediation. Pl. SOMF ¶ 5.  On June 22, 2016, Plaintiff received a letter from North Arlington stating its intent to conduct a reevaluation of EAP on July 20, 2016. ECF No. 10.11 at 22; <u>see</u> also ECF No. 10.29 at 52.  However, on July 6, 2016, Plaintiff sent an e–mail requesting that the reevaluation meeting be pushed back until after mediation. ECF No. 10.18 at 72.  In an e–mail dated July 7, 2016, Plaintiff argued that reevaluation and declassification could not take place while mediation was pending.  <u>Id.</u> at 71.  Plaintiff explicitly stated, "I will not discuss reevaluations or declassification while my matter is in Stay Put."  <u>Id.</u>  On July 14, 2016, North Arlington indicated that they intended to follow through with the declassification meeting but suggested that it be pushed until July 26, 2016 so that Plaintiff would have time to review requested documents.  <u>Id.</u> at 76, 84. When North Arlington followed up to confirm the new date, Plaintiff indicated that she would be unable to attend the meeting on July 26 due to her work schedule and further noted that she believed any scheduling of meetings to reevaluate EAP would violate her "stay put" rights.  <u>Id.</u> at 82.  The July 26 meeting was then cancelled, and North Arlington held an eligibility meeting on August 8, 2016 without any reevaluation of EAP.  <u>Id.</u>; Pl. SOMF ¶ 107.  Thus, the ALJ was not wrong in determining that Plaintiff declined to meet to discuss reevaluation during this time.

elimination of, services," "the provision was never intended to suspend or otherwise frustrate the ongoing cooperation of parents and the school district to reach an amendable resolution of a disagreement over educational services." C.H., 606 F.3d at 72. Thus, the stay–put provision does not excuse Plaintiff from declining to agree to EAP's reevaluation. See id. (finding that the stay–put provision did not excuse parents from refusing to "continue with IEP development or permit evaluation" of their child).

Second, Plaintiff argues that "the declassification was flawed" because EAP was still demonstrating a need for special education as of June 2016. Pl. Br. at 31–34. To be classified as a "preschool child with a disability" in New Jersey, the child must: (1) be between the ages of three and five; (2) experience a developmental delay; and (3) require special education and related services. N.J.A.C. § 6A:14–3.5(c)(10). A "developmental delay" is further defined as a 33% delay in one developmental area, or a 25% delay in two or more developmental areas. Id. (listing the following areas of developmental delay: physical, intellectual, communication, social and emotional, and adaptive). The ALJ found, however, that there "was no evidence presented which showed that [EAP] needed continued special education in order to be successful." ECF No. 10.5 at 47 ("The District's witnesses were compelling as they worked with EAP on a regular basis and came to the conclusion that the child made tremendous progress and no longer needed special and related services.").

The Court finds that the record supports the ALJ's decision to uphold the North Arlington's eligibility determination. All three of North Arlington's witnesses, whom the ALJ found credible, testified that EAP made significant progress such that she no longer needed special education services. For example, Hornstein testified that EAP had mastered eleven of her twelve speech goals by the end of the 2015–2016 school year. ECF No. 10.28 at 131–32. Hornstein

acknowledged that EAP was still a "little shyer" than her peers, but explicitly noted that this was not a reason that EAP should continue to need special education. See id. at 142. Similarly, Porfido acknowledged that EAP had not mastered certain social goals by the end of the school year, but explained that she did not believe that those weaknesses would impact EAP's "ability to perform socially." Id. at 83; see also id. at 87–90 (agreeing with the decision to declassify because continued special education was not required for EAP). Likewise, Kropp testified that EAP did not continue to need special education or related services at the conclusion of the 2015–2016 school year. See ECF No. 10.27 at 49–53 (explaining that EAP's reports and end of the year testing supported declassification).[9]

Plaintiff puts forth various pieces of evidence to support her claim that EAP "had not met many of her goals" as of June 2016. Pl. Br. at 32–33. Although this evidence may tend to show that EAP was still been exhibiting a developmental delay, it does not establish that EAP required special education services, as is necessary to satisfy N.J.A.C. § 6A:14–3.5(c)(10). As discussed, the credible evidence in the record demonstrates that EAP had made significant progress, such that she could succeed without special education. The Court recognizes that there is some evidence in the record to the contrary. Yet, much of this evidence was found to come from sources the ALJ found were not credible. For example, Hafitz, Havens, and Attinson each testified that they believed EAP had social challenges which require special education support and programming. See ECF No. 10.28 at 10–14, 19–20; 10.29 at 71, 126. However, the ALJ agreed with Hornstein's assessment that Attinson and Havens "relied too much on parent reporting rather than objective criteria to opine that [EAP] qualified for continued services." ECF No. 10.5 at 11. Moreover, the

---

[9] Plaintiff points to the fact that Kropp acknowledged that EAP's lack of progress on her social goals would impact her ability to engage appropriately with her peers. See Pl. Br. at 33; ECF No. 10.28 at 77. Kropp still maintained, however, that this weakness would not require continued special education services.

ALJ explicitly found the testimony of North Arlington's witnesses to be the "most compelling." Id. at 10. The Court declines to disturb the ALJ's credibility determination in the absence of "non–testimonial extrinsic evidence [that] justifies a contrary conclusion." C.S., 2017 WL 4122433, at *5.

Accordingly, North Arlington has shown by a preponderance of the evidence that its decision to declassify EAP did not violate the IDEA.

### 4. Compensatory Education and Tuition Reimbursement

Plaintiff seeks compensatory education for the 2015–2016 school year and tuition reimbursement for 2016–2017 school year at Lightbridge Academy. Because the Court has determined that EAP was appropriately found ineligible for special education services for the 2016–2017 school year, EAP is not entitled to reimbursement for her tuition at Lightbridge. See Mary T., 575 F.3d at 242. However, Plaintiff may be entitled to compensatory education for the 2015–2016 school year if the ALJ determines that North Arlington violated the LRE requirement.

"In the event that a student has been denied a FAPE, a court may award compensatory education to account for the period the student was deprived of this right." Id. at 249; see also M.C. on Behalf of J.C. v. Central Regional Sch. Dist., 81 F.3d 389, 397 (3d Cir. 1996) ("[T]he prerequisite of a compensatory education award has not been the gross, egregious, or bad faith conduct of the school district but rather a simple finding that a child has received an inappropriate education."). "Compensatory education is crucial . . . and the courts, in the exercise of their broad discretion, may award it to whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation." G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 625 (3d Cir. 2015).

As at least one other court in this Circuit has noted, however, "[t]he Third Circuit has issued

confusing pronouncements about the relationship between FAPE, LRE, and an award of compensatory education." Tyler W. ex rel. Daniel W. v. Upper Perkiomen Sch. Dist., 963 F. Supp. 2d 427, 435 n.3 (E.D. Pa. 2013); compare S.H., 336 F.3d at 265 ("[T]he IDEA includes a mainstreaming component in its description of a free and appropriate public education, requiring education in the least restrictive environment."), with A.G. ex.rel S.G., 374 F. App'x at 334 (finding that FAPE and LRE are "distinguishable" concepts). As per S.H., "violation of the LRE mandate necessarily entails failure to provide a FAPE, which in turn triggers compensatory education." Tyler W. ex rel. Daniel W., 963 F. Supp. 2d at 435 n.3. In contrast, the Court in A.G. indicated that award of compensatory education may be "improper" where a district violates the LRE mandate but has provided the child with FAPE. 374 F. App'x at 335 (citing Lauren W. v. DeFlaminis, 480 F.3d 259, 272–73 (3d Cir. 2007)).

Given the significance of the LRE mandate, the Court finds is unconvinced that compensatory education could never be appropriate where a school district fails to mainstream the student, but otherwise provides a FAPE. See Oberti, 995 F.2d at 1214 (emphasizing the IDEA's "presumption in favor of mainstreaming"). To find otherwise would undermine the force of the mainstreaming requirement. In addition, in a more recent Third Circuit case, the Court found that the violation of the LRE requirement constituted a substantive denial of a FAPE, H.L., 624 F. App'x at 69–70. It therefore follows that violation of the LRE requirement, by itself, can trigger the award of compensatory education. This finding is also consistent with the Third Circuit's decision in Carlisle Area Sch. v. Scott P. By and Through Bess P., which reaffirmed the Court's position that "compensatory education is available to respond to situations where a school district flagrantly fails to comply with the requirements of IDEA." 62 F.3d 520, 536 (3d Cir. 1995) (emphasis added).

Accordingly, the Court remands to the ALJ to consider whether an award of compensatory education is appropriate, and if so, what that award should entail.

### B. Count 2: Plaintiff's Claims Under the ADA, the RA, and the NJLAD

Finally, Plaintiff maintains that she is entitled to summary judgment on her claims arising under the ADA, RA, and NJLAD. North Arlington argues that each of these claims must be dismissed because Plaintiff's "sole remedies are pursuant to the IDEA." <u>See</u> Def. Br. (arguing that Plaintiff's ADA, RA, and NJLAD claims are merely an inappropriate attempt to repackage her IDEA claims). The Court finds plaintiff may pursue such claims, but not until the all of her claim under the IDEA are exhausted. Thus, in light of this Court's remand to the ALJ on the LRE issue, the ADA, RA and NJLAD claims are dismissed without prejudice.

As an initial matter, Plaintiff is not barred from bringing IDEA claims and claims under the ADA, RA and NJLAD. <u>See, e.g.</u>, <u>Jeremy H. by Hunter v. Mount Lebanon Sch. Dist.</u>, 95 F.3d 272, 281 (3d Cir. 1996). However, "Section 1415(f) of IDEA [provides] . . . that, before bringing claims under other statutes that 'seek [ ] relief that is also available under this subchapter,' the administrative procedures set forth in section 1415 'shall be exhausted to the same extent as would be required had the action been brought under this subchapter.'" <u>Id.</u> (quoting 20 U.S.C. § 1415(f)). Thus, plaintiffs are prohibited from "circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute." <u>Id.</u> Thus, until the ALJ determines the LRE issues and any damages flowing therefrom, plaintiff cannot pursue her other statutory claims. Plaintiff's claims under the ADA, RA and NJLAD are therefore dismissed without prejudice.

**CONCLUSION**

For the forgoing reasons, Plaintiff's Motion for Summary Judgment and Judgment on the Administrative Record is **DENIED**, and Defendant's Cross Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.  Plaintiff's claims under the ADA, RA, and NJLAD are dismissed without prejudice.  This case is remanded to the ALJ for proceedings consistent with this Opinion.

**Dated: April 1, 2019**

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**